UTICA,
July, 1838.

Phelps
v.
Sowles.

</div>

<div align="center">

Judgment reversed.

</div>

---

<div align="center">

PHELPS & LADD *vs.* SOWLES.

</div>

Whether a non-intercourse act, subjecting to seizure and forfeiture property carried into the territories of a foreign state, passed by one of the states of the Union, during a time of war between the U. S. and the sovereign of the country of which such territories are a part, is a constitutional and valid act so as to protect persons acting under its authority, quere.

If it be constitutional and valid, a defence arising under it may be shown under the general issue pleaded to an action of indebitatus assumpsit, and it is not necessary that the facts should be specially pleaded.

A plea which is an answer to only part of a count is bad, although there be other pleas which go to the whole action.

DEMURRER *to* plea. The declaration in this cause contained five counts : 1. For divers goods, wares and merchandizes, and *thirteen kegs of tobacco,* sold and delivered to the defendant ; 2. A *quantum valebant* on same articles ; 3. An *insimul computassent;* 4. A count for money had and received, money paid, laid out and expended, and money lent and advanced ; and 5. A count for work, labor and services and materials found. The *day laid* in the declaration was the 1st January, 1814, and the declaration contained a suggestion that for more than *nineteen years* previous to the commencement of the suit the defendant was a *resident of Vermont.* The defendant pleaded, 1. Non assumpsit ; 2.

The statute of limitations ; and 3. A special plea commencing thus : " And for a further plea in this behalf *as to the said fourth count* of the said declaration, and *as to the said thirteen kegs of tobacco* in the said *first* and *second* counts of the said declaration mentioned," the said plaintiffs ought not to have or maintain their aforesaid action thereof against him, because he says, &c. setting forth an act of the legislature of the state of Vermont, passed 6th November, 1812, subjecting to seizure and forfeiture any property taken *towards* Canada, with the intent to transport the same into that province ; and prescribing the mode of proceeding : which was that the property should be libelled before three justices of the peace, one of whom to be a judge of a county court, who might immediately proceed to condemn the property and order it to be sold.   The plea then alleges that the *thirteen kegs of tobacco* were seized and condemned under that law, *that the defendant was one of the board of magistrates* who condemned the property as forfeited and ordered it to be sold ; that it was sold by virtue of such order, and the proceeds of the sale received by one John Downing. The defendant then avers that the *thirteen kegs of tobacco* for which the action is brought are the same thirteen kegs of tobacco which were condemned and sold as forfeited, and that the moneys in the fourth count of the declaration mentioned are the proceeds of the sale of the tobacco under the said condemnation.   The defendant then concludes his plea with a *verification* and prayer of judgment, " if the said plaintiffs ought to have or maintain *their aforesaid action* thereof against him, &c."   To the third plea the plaintiffs put in a *general demurrer.*

*A. Taber*, for the plaintiffs.

*M. T. Reynolds*, for the defendant.

*By the Court*, COWEN, J.   The principle of the demurrer is, that the Vermont *non-intercourse act* of 1812 was void for want of state jurisdiction over the subject matter, inasmuch as that belonged exclusively to congress under the

provisions of the constitution of the United States. The contrary was decided by the supreme court of the state of Vermont, in 1817, in an action of *trespass de bonis*, &c. ; viz. that the proceedings under the act were proper as evidence to the jury, to justify the taking. *Edwards* v. *Adams*, Brayt. R. 46. When the question shall be properly raised in this cause, we must, of course, review that decision. However, we are not inclined to do it upon this plea, which is sufficiently defective in other respects.

In any form the plea must certainly be a very singular one in an action of general *indebitatus assumpsit;* and I am sure could never be sustained against a special demurrer. As it is, it is technically bad on general demurrer. *First,* it is an answer to *only part* of the first and second counts; and, I think, cannot be made to bear fully, if at all, as an answer to the fourth. It does not pretend to answer the third and fifth counts; *Hickok* v. *Coates*, 2 Wendell, 419; *Jackson, ex dem. Hallenbake,* v. *McClaskey*, id. 541, 544, 5, per Savage, C. J. ; *Sterling* v. *Sherwood*, 20 Johns. R. 204 ; *Slocum* v. *Despard*, 8 Wendell, 615 ; *Etheridge* v. *Osborn*, 12 id. 399 ; *Loder* v. *Phelps*, 13 id. 46 ; and secondly, it begins as an answer to part and concludes by praying judgment of the action generally. *Loder* v. *Phelps*, 13 Wendell, 46, 48. It is no answer to these objections that the other pleas go to the whole action. Each plea must be perfect in itself. *Loder* v. *Phelps*, before cited.

This whole defence could with much more propriety have been heard on the general issue : and I seriously doubt whether a plea can ever be made to reach these general counts even in substance. The attempt is, at any rate, a very difficult one. It is out of the ordinary way of pleading, As the plea stands, it is a most tedious one, and must be made much more so before we can hold it technically good so as to raise the question of substance ; and as it is now overruled on technical defects merely, and the whole matter is receivable, if worth any thing, on the general issue, there can be no object in allowing an amendment.

There must be judgment for the plaintiff on the demurrer.